**Manuel PARRA, Petitioner–Appellant,**

v.

**Brian PERRYMAN, District Director, Immigration and Naturalization Service, Respondent–Appellee.**

No. 99–1287.

United States Court of Appeals,
Seventh Circuit

Submitted March 8, 1999.

Decided March 24, 1999.

Michael B. Cohen (submitted), Chicago, IL, for Petitioner–Appellant.

Alice E. Loughran (submitted), Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondents–Appellees.

Before EASTERBROOK, MANION, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Manuel Parra, a citizen of Mexico, is confined by the federal government pending the conclusion of removal proceedings. Parra was convicted in 1996 of aggravated criminal sexual assault, a felony that by virtue of 8 U.S.C. § 1227(a)(2)(A)(iii) requires his removal from the United States. On December 7, 1998, Parra was taken into federal custody and ordered to show cause why he should not be removed. Because this proceeding began after April 1, 1997, it is governed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Division C of Pub.L. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996). We therefore use the new statutory terminology of "removal" rather than "deportation" and cite to the current provisions of Title 8, avoiding the complex transition issues that affect some older cases. See *Reno v. American–Arab Anti–Discrimination Committee*, —— U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999).

Section 236(c)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c)(1), as

amended by the IIRIRA, says that the Attorney General "shall take into custody any alien who" is removable as an aggravated felon under § 1227(a)(2)(A)(iii) (or a number of other sections). A person taken into custody under § 236(c)(1) may be released under § 236(c)(2), but

> only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

(Emphasis added.) Section 3521 is the witness protection program, and Parra is not eligible for its benefits. Nor is he eligible for another safety valve, a transition rule that permitted release on bail until October 9, 1998. See IIRIRA § 303(b)(3). An immigration judge ordered Parra released on bond, despite the expiration of § 303(b)(3), but an administrative appeal automatically stayed the release order. 8 C.F.R. § 3.19(*i*)(2). In consequence, Parra is being held without possibility of bail. He sought a writ of habeas corpus under 28 U.S.C. § 2241, contending that the amended § 236(c) violates the due process clause of the fifth amendment, but the district court dismissed his petition for want of jurisdiction. Parra asks us for release pending appeal of that decision; the INS, by contrast, seeks summary affirmance.

■ *LaGuerre v. Reno*, 164 F.3d 1035 (7th Cir.1998), holds that the IIRIRA channels most claims concerning removal to the court of appeals, and forecloses the use of § 2241 to obtain review either of contentions that will be heard by the court of appeals, or that Congress has deter-

mined may not be heard by any court. Accord, *Richardson v. Reno*, 162 F.3d 1338 (11th Cir.1998). One line of argument that cannot be made at any time, in any court, is that a person with a conviction for an aggravated felony is entitled to discretionary relief permitting him to remain in the United States. *Yang v. INS*, 109 F.3d 1185, 1190–92 (7th Cir.1997). For someone in Parra's position, then, removal is overwhelmingly likely. He concedes that he is an alien and that he has been convicted (on his plea of guilty) of a crime meeting the statutory definition of an aggravated felony. On March 3, 1999, an immigration judge concluded that Parra is deportable and ineligible for any relief from removal; his motions papers in this court do not even hint at a substantive argument that he is entitled to remain in the United States. The question at hand therefore is where he passes the time while waiting for the order to become final. He says that he wants to spend it at home, with his family (he has three children who are U.S. citizens); the Department of Justice fears that if released on bail Parra will go into hiding in order to stay in the United States indefinitely. According to the Department, approximately 90% of persons in Parra's situation absconded when released on bail before the IIRIRA. 62 Fed.Reg. 10,312, 10,323 (1997). But we oughtn't get ahead of things; jurisdiction is the first issue.

■ Section 306(c)(1) of the IIRIRA, codified at 8 U.S.C. § 1252(g), says that, except to the extent specifically provided elsewhere in § 1252, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." This provision, we held in *LaGuerre*, supersedes § 2241 in cases to which it applies. But as *American–Arab Anti–Discrimination Committee* makes clear, the proviso "to which it applies" is vital. The Supreme

Court held that § 1252(g) is not a general review-preclusion law, but covers only the three listed situations: decisions to "commence proceedings, adjudicate cases, or execute removal orders". —— U.S. at ——–—–——, 119 S.Ct. at 943–45. Petitioners in *LaGuerre* tried to use § 2241 to obtain anticipatory review of both the administrative adjudication and the removal order; that gambit was the sort of thing § 1252(g) prevents. Parra, by contrast, did not ask the district court to block a decision "to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." His claim concerns detention while the administrative process lasts, and it may be resolved without affecting pending proceedings. Section 1252(g) therefore does not foreclose review, and the INS does not rely on it in this court.

■ What the INS does invoke is § 1226(e):

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

The first sentence of § 1226(e) precludes judicial review of the Attorney General's decision to apply § 1226(c)(1) to Parra; the second sentence precludes review of the Attorney General's decision to deem Parra ineligible for release under § 1226(c)(2) (or any other source of authority to grant bail). According to the INS, this means that there is no jurisdiction in the district court. Not so fast. Two particular avenues of attack have been cut off by § 1226(e). A person who has different legal arguments may present them. This is how the Supreme Court treated § 1252(g) in *American–Arab Anti–Discrimination Committee*, and the same kind of reading is appropriate for § 1226(e). That statute does not purport to foreclose challenges to § 1226(c) itself, as opposed to decisions implementing that subsection. In this respect § 1226(e) is like former 38 U.S.C. § 211(a), which limited review of veterans' benefits awards. Although the statute barred review of decisions about claims to benefits, *Johnson v. Robison*, 415 U.S. 361, 366–74, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), held that it did not bar review of challenges to the statute under which those claims were made. See also, e.g., *Traynor v. Turnage*, 485 U.S. 535, 541–45, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988); *Czerkies v. Department of Labor*, 73 F.3d 1435 (7th Cir.1996) (en banc); *Marozsan v. United States*, 852 F.2d 1469 (7th Cir.1988) (en banc).

■ Section 1226(e) likewise deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions. The district court therefore had jurisdiction under § 2241, and it is unnecessary for us to decide whether § 1226(e) should be understood as an effort to "suspend" the writ of habeas corpus—the *original* writ under Art. I, § 9, cl. 2, the Great Writ, which is a device to prevent detention by the Executive Branch without trial. *Ex parte Bollman & Swartwout*, 8 U.S. (4 Cranch) 75, 2 L.Ed. 554 (1807); *Ex parte McCardle*, 73 U.S. (6 Wall.) 318, 18 L.Ed. 816 (1868); *Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). Section 1226(c) authorizes detention by the Executive Branch without trial, and it is easy to imagine cases—for example, claims by persons detained under § 1226(c) who say that they are citizens rather than aliens, who contend that they have not been convicted of one of the felonies that authorizes removal, or who are detained indefinitely because the nations of which they are citizens will not take them back—in which resort to the Great Writ may be appropriate. Today's case presents none of these possibilities, however, for Parra concedes that he is an alien removable because of his criminal conviction, and Mexico accepts returns of its citizens.

■ Although the district court should have addressed Parra's claim on the merits, a remand is unnecessary. Section 1226(c) plainly is within the power of Congress. *Martinez v. Greene*, 28 F.Supp.2d 1275 (D.Colo.1998), which held the statute unconstitutional, is unpersuasive. Persons subject to § 1226(c) have forfeited any *legal* entitlement to remain in the United States and have little hope of clemency. (One is tempted to say "no" hope, but life is full of surprises, and a last-minute amendment of the immigration laws or change in policy has kept many an immigrant in this country. For current purposes "little" hope will do.) Before the IIRIRA bail was available to persons in Parra's position as a corollary to the possibility of discretionary relief from deportation; now that this possibility is so remote, so too is any reason for release pending removal. Parra's legal right to remain in the United States has come to an end. An alien in Parra's position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket. A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs.

■ The due process calculus under *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), requires the court to evaluate the private interest, the probability of error (and the effect of additional safeguards on the rate of error), and the government's interest in dispensing with those safeguards, with a thumb on the scale in favor of the statute's constitutionality. The private interest here is not liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country but eligible to live at liberty in his native land; the probability of error is zero when the alien *concedes* all elements that require removal (as Parra has done); and the public interest is substantial given the high flight rate of those released on bail. The Supreme Court held in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), that pretrial detention in criminal prosecutions (a parallel to pre-removal detention) comports with the Constitution even though the private interest is greater, the likelihood of error must be deemed significant given the prosecutor's high burden at a criminal trial, and the public interest is less (for the skip rate on bond in criminal prosecutions is well under 90%). Given the sweeping powers Congress possesses to prescribe the treatment of aliens, see *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), the constitutionality of § 1226(c) is ordained.

Well before the IIRIRA we stated that once deportation proceedings have begun an alien's detention is constitutional. *Arias v. Rogers*, 676 F.2d 1139, 1143–44 (7th Cir.1982). Both *Reno v. Flores*, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), and *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), hold that under pre-IIRIRA law an alien had no entitlement to release pending the conclusion of deportation proceedings. If this was so even when the Attorney General had open-ended authority to grant discretionary relief from deportation—and thus to render the imprisonment gratuitous—then there can be no doubt about the constitutionality of § 1226(c) now that these powers to forego removal have been curtailed.

The judgment of the district court is vacated, and the case is remanded with instructions to deny the petition on the merits.