**Angelo MORO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Brian Perryman,
District Director, INS and United
States of America, Respondents.**

No. 98 C 7945.

United States District Court,
N.D. Illinois,
Eastern Division.

May 14, 1999.

Jacob Daniel Azulay, Y. Judd Azulay,
Azulay & Azulay, P.C., Chicago, IL, Fred-
erick F. Cohn, Attorney at Law, Chicago,
IL, Heidi Lee Widell, Steele & Widell,
P.C., Chicago, IL, for, petitioner.

James G. Hoofnagle, U.S. Attorney's Of-
fice, Chicago, IL, for, respondents.

### *MEMORANDUM OPINION
AND ORDER*

GOTTSCHALL, District Judge.

Petitioner, Angelo Moro, a criminal alien
subject to a Final Administrative Removal
Order issued against him on December 3,
1998, has filed a petition for Writ of Habe-
as Corpus seeking his release on bond
pending his actual removal from the Unit-
ed States. The government has moved to
dismiss his petition on the basis that this
court lacks jurisdiction to entertain any of
Moro's claims. Having already addressed
the issue of its jurisdiction over Moro's

challenges to his final order of removal, the court now turns to his challenge to his continued confinement in light of the government's alleged inability to remove him to any country. For the reasons explained below, the court rejects the government's argument that it lacks jurisdiction under 8 U.S.C. § 1252(g) but will reserve decision on whether Moro has exhausted his administrative remedies pending receipt of the information requested herein.

## I. BACKGROUND

On December 3, 1998, an immigration judge (IJ) issued a Final Administrative Removal Order against Moro under § 237(a)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(ii).[1] The judge also denied Moro's request for a redetermination of bond, finding that he was ineligible for release under INA § 236(c)(1)(B), 8 U.S.C. § 1226(c)(1)(B), which mandates that certain classes of criminal aliens be taken into custody. Having conceded deportability under § 1227(a)(2)(A)(ii), Moro waived appeal to the Board of Immigration Appeals (BIA) of the removal order itself but reserved appeal of the IJ's decision to deny his request for a redetermination of bond pending his actual removal from the United States.

On December 14, 1998, Moro filed an Amended Petition for Writ of Habeas Corpus ("Petition")[2] seeking release on bond. Moro, who has been in INS custody since September 24, 1998,[3] argued that: 1) the statutory and regulatory scheme rendering him deportable on the basis of two property-crime convictions is unconstitutional; and 2) his continued detention is unconstitutional given that INS is unable to deport him to Yugoslavia,[4] the country designated in his removal order. Indeed, according to Moro, his status as a Romani who "has no identity documents showing that he is a citizen of any particular country," Petition ¶ 22, renders him a stateless individual who INS will be unable to deport to *any* country.

On February 18, 1999, after inviting the parties to file supplemental briefs on how the recent Seventh Circuit decision in *LaGuerre v. Reno*, 164 F.3d 1035 (7th Cir. 1998) (interpreting AEDPA § 440(a)), affects this case, the court issued a minute order finding that it had no jurisdiction over Moro's case insofar as he sought to challenge the statutory and regulatory structure rendering a person deportable on the basis of two property-crime convictions.[5] Such a challenge, the court found, constitutes a challenge to a final order of

1. Section 1227(a) lists classes of deportable aliens; among these classes are certain criminal aliens, including aliens who have been convicted, after admission to the United States, of "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." 8 U.S.C. § 1227(a)(2)(A)(ii). Moro concedes that he falls within this subclass of deportable criminal aliens.

2. To be precise, Moro filed his original petition on December 11, 1998, then amended that petition on December 14 in a document that listed the additions he wished to make to the original petition in lieu of filing a separate and complete "Amended Petition." For convenience, the court will refer to the original petition, together with the aforementioned additions, as the "Petition."

3. Except for a one week period from April 23, 1999 until April 30, 1999, during which INS

unexpectedly released and then redetained Moro.

4. Moro bases this argument on his status as a Romani, or gypsy, which renders him a stateless individual. The court notes, however, that the designation of Yugoslavia as the removal destination for Moro may prove problematic for another reason: the ongoing hostilities between NATO and Yugoslavia. Moro's claim of statelessness, however, makes it unnecessary at this time to consider other impediments to his removal.

5. In his Emergency Motion for Hearing on Continued Confinement of Petitioner, Moro misconstrues this court's February 18, 1999 minute order. Citing the recent Seventh Circuit decision of *Parra v. Perryman*, 172 F.3d 954 (7th Cir.1999), Moro requests this court to "reconsider its decision that it lacks subject matter jurisdiction to entertain the merits of the habeas petition" and to "schedule a hearing on the constitutionality of the continued

deportation and must, therefore, be raised directly before the Court of Appeals. By contrast, the court found that *LaGuerre* did not bar its consideration of Moro's other claims, which assert that his continued detention is excessive and thus violative of due process because it has no relation to the government's asserted goal of removing him from the United States. The court then invited the government to file a supplemental brief on whether any other statutory provision deprives it of jurisdiction over Moro's custody claims, requesting that the government address in particular the relevance, if any, of 8 U.S.C. § 1231(a)(6) and 8 U.S.C. § 1252(g).

In its original memorandum, the government argued that this court lacks jurisdiction to review Moro's custody either prior to or following his December 3, 1998 removal hearing because § 1252(g) effected a repeal of district court jurisdiction to entertain habeas petitions by aliens under a final order of removal and because Moro has not exhausted his administrative remedies. The government further argued that Moro's pre-hearing and post-hearing custody were properly initiated and continued pursuant to valid statutory authority.

In its supplemental memorandum, the government reiterates its exhaustion argu-

confinement of Petitioner pending the conclusion of removal proceedings." The court did not decide that it had no jurisdiction over this case; the court decided that, under *LaGuerre*, it had no jurisdiction over Moro's case *insofar as he sought to challenge his final order of removal.* *Parra* does not change this result, for Parra was not challenging a final order of removal. Rather, he was challenging his *continued confinement* "while waiting for the order to become final." *Id.* at 955–56.

Moreover, in its February 18 order, the court expressly *reserved decision* as to whether it had jurisdiction over Moro's claim that his continuing detention is excessive and unconstitutional in light of the government's alleged inability to deport him to any country. It is to this claim that the court now turns—and to which *Parra* is relevant, though not precisely parallel.

6. By contrast, 8 U.S.C. § 1226 governs the apprehension, detention, and release of aliens

ment and modifies its § 1252(g) argument in light of the recent Supreme Court decision in *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). The government now argues that Moro's efforts to be released from custody are barred by § 1252(g)'s bar against jurisdiction over challenges to the execution of removal orders. The government also argues that: 1) Moro's continued detention following the removal period is proper under § 1231(a)(6); 2) Moro has no fundamental right to be released; and 3) Moro's continued detention fosters a legitimate governmental purpose.

As Moro appears to challenge only his *continued* confinement following the denial of his redetermination of bond request at his December 3, 1998 hearing, the court need only address the issue of Moro's post-hearing custody.

## II. *DISCUSSION*

### A. *The Statutory Scheme for Detention of Criminal Aliens Following the Entry of Removal Orders*

This case is governed by 8 U.S.C. § 1231,[6] which sets forth the custody rules for detention and removal of aliens against whom orders of removal have been issued.[7]

*pending decision* on whether an alien is to be removed from the United States. Section 1231, not § 1226, is the operative section in this case because a final order of removal was entered against Moro on December 3, 1998, when the IJ ordered his removal and Moro waived appeal to the BIA of that order on the merits.

7. The court notes that it does not fully understand Moro's assertion that he must be given the "advantage" of "prior law." Memorandum in Support of Amended Petition at 5. Moro does not specify what rule or provision he is alluding to. From other documents filed with the court—namely, requests for government stipulations that the Mandatory Custody Rules (MCR) do not apply to Moro and that Moro was served with a Notice to Appear (NTA) when the Transition Period Custody Rules (TPCR) were in effect—the court assumes that this is the issue to which he alludes. Moro has raised this argument only in the most conclusory fashion before

### 1. *Detention during the removal period*

Under § 1231, the Attorney General is directed to remove aliens subject to orders of removal within 90 days (the "removal period"). *Id.* § 1231(a)(1)(A). During the removal period, the Attorney General is also directed to detain such aliens. *Id.* § 1231(a)(2). The statute further emphasizes that "[u]nder no circumstances during the removal period shall the Attorney General release an alien who has been found ... deportable under § 1227(a)(2) [the criminal alien provision] ... of this title." *Id.*

■ In this case, the applicable date for the beginning of the removal period is the date on which Moro's order of removal became administratively final: December 3, 1998. *Id.* § 1231(a)(1)(B)(i). As an admitted criminal alien found deportable under § 1227(a)(2)(A)(ii), Moro qualifies as an alien who cannot, under § 1231, be released under any circumstances during the removal period. *Id.* § 1231(a)(2). The government thus correctly argues that Moro's custody *during* the removal period was not only authorized but required under the statute.

### 2. *Detention following the removal period*

The government arguments about the propriety, under § 1231, of Moro's continued detention *following* the removal period are on less solid ground. The government argues that: 1) Moro's custody is not only authorized but required under 8 U.S.C. § 1231(a)(6); and 2) INS may continue to hold Moro in custody under 8 U.S.C. § 1231(a)(1)(C) due to his "nonassistance"

in procuring the documents necessary for his departure from the United States.

■ Aside from outlining and authorizing the detention of aliens during the removal period, § 1231 also contains provisions addressing the custody of aliens following the removal period, directing supervised release for some types of aliens and permitting continued detention of others. As a general rule, "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General" and including certain specified provisions. 8 U.S.C. § 1231(a)(3). The statute further specifies, however, that certain types of aliens "*may* be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph 3." *Id.* § 1231(a)(6) (emphasis added). These aliens include, among others, aliens found removable under 8 U.S.C. § 1227(a)(2) (criminal aliens) and aliens determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal. Under § 1231(a)(6), the statute thus permits—though it does not require—detention beyond the removal period, at the discretion of the Attorney General, for these types of aliens. It also appears to vest the Attorney General with the discretionary power to order supervised release for these aliens.

Subsection 1231(a)(1)(C), titled "[s]uspension of period," states:

The removal period shall be extended beyond a period of 90 days and the alien

this court, however, citing no statutory provisions. What additional information the court has comes from the record of the administrative proceedings in this case, which Moro provided to the court upon its request when the court heard his Emergency Motion on May 7, 1999.

As an initial matter, the court notes that this proceeding, which began on April 24, 1997, when Moro was served with the NTA, is governed by the Illegal Immigration Reform

and Immigrant Responsibility Act of 1996 (IIRIRA). *Parra*, 172 F.3d 954, 955–56 (holding that proceedings commenced after April 1, 1997 are governed by IIRIRA). The court understands 8 U.S.C. § 1231—a provision Moro himself cites in his Petition—to be the applicable provision in this case. If Moro disagrees, he should bring his disagreement to the court's attention, setting out in detail what provisions or rules he believes are applicable.

may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

This subsection requires the extension of the removal period and permits continued detention in the event that an alien improperly inhibits removal efforts. Although this subsection places a burden of good-faith cooperation on aliens in securing their removal, it does not, contrary to the government's assertion, require Moro's continued detention because there is no evidence in this case that Moro has impeded the government's efforts to remove him or refused relevant assistance. According to Moro, he *cannot* obtain documentation of his identity because of his status as a Romani. Consequently, at this stage the court cannot find that § 1231(a)(1)(C) applies to defeat Moro's claim that his continued detention is improper.

Although the court has rejected some of the arguments the government makes regarding the applicability and interpretation of various provisions of § 1231, it agrees with the government that the statute required Moro's detention during the removal period and further finds that it permits his detention, pursuant to § 1231(a)(6), even following the 90–day time period. This holding does not, however, end the inquiry, for Moro has asserted that this scheme is unconstitutional, a claim the government contends this court has no jurisdiction to review.

### B. *Jurisdiction Over Moro's Claim That His Continued Detention Is Unconstitutional*

The government has argued that both § 1252(g) and Moro's failure to exhaust his administrative remedies deprive this court of jurisdiction over his constitutional challenge to the statutory scheme that permits his continued detention both during and after the removal period despite the government's alleged inability to effect his removal.

### 1. *Section 1252(g)*

The court disagrees with the government's contention that it lacks jurisdiction over this case pursuant to 8 U.S.C. § 1252(g). Subsection 1252(g), titled "Exclusive Jurisdiction," states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act [the INA].

The government initially argued that § 1252(g) effected a complete repeal of district court jurisdiction to entertain habeas petitions by aliens subject to final orders of deportation or removal. The Supreme Court's narrow construction of § 1252(g) has, however, rendered this argument unavailing. *See Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, ——, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999) (holding that § 1252(g) applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders' "). In *American–Arab,* the Court expressly rejected the argument that § 1252(g) "covers all or nearly all deportation claims," *id.* at 941, emphasizing the implausibility "that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* at 943. As the Court pointed out, "[t]here are of course many other decisions or actions that may be part of the deportation process," such as the decision to open an investigation or to surveil a suspected violator. *Id.*

Recognizing the limitations the Supreme Court imposed in *American–Arab,* the government now contends that this case "falls within the jurisdictional prohibition of 8 U.S.C. § 1252(g) relating to the execution of removal orders because petitioner's efforts to be released from custody in-

terfere with the action of the Attorney General seeking to execute his deportation (removal) order pending against him and remove him from the United States." Respondent's Supplemental Memorandum at 3. According to the government, since Moro's custody is "entwined" with the removal order, this court should find that it lacks jurisdiction. *Id.* at 4.

Reading the phrase "execute removal orders" "to mean precisely what [it] say[s]," *American–Arab*, 525 U.S. at —— n. 9, 119 S.Ct. at 944 n. 9, the court cannot agree. Moro is not challenging the "execution" of his removal order, for he is not seeking to block any effort to put him on a plane or boat and actually, physically remove him from this country; rather, he is challenging his *continued detention pending the execution* of this order. *See Parra*, 172 F.3d 954, 956–57 (rejecting argument that § 1252(g) applied to bar challenge by alien who sought release from confinement while waiting for his order of removal to become final). Subsection 1252(g) is inapplicable to such a claim, because custody pending deportation is one of the "many other decisions or actions that may be part of the deportation process" that are not included in § 1252(g)'s bar on jurisdiction. *Cf. American–Arab*, 525 U.S. at ——, 119 S.Ct. at 945 (finding petitioners' claim that they were targeted for deportation because of their political affiliation barred by § 1252(g) because it constituted a challenge to the Attorney General's decision to "commence proceedings," one of the three types of decisions protected from judicial review under 1252(g)).

### 2. *Exhaustion of administrative remedies*[8]

Finally, the government argues that Moro has failed to exhaust his administrative remedies. Specifically, the government points out that Moro timely appealed the IJ's December 3, 1998 denial of his request for a redetermination of bond to the BIA and that the BIA has not yet acted on this appeal. To counter this argument, Moro invokes the futility exception to the exhaustion doctrine.[9] According to Moro, INS routinely opposes bail for people in Moro's situation, and the BIA routinely affirms IJ decisions denying bail. Under these circumstances, Moro contends, no remedy for his complaint is realistically and actually available in the administrative process, rendering pursuit of his appeal futile.

■ Generally speaking, exhaustion of administrative remedies is required under the INA before an alien may challenge an order of deportation or removal. *See* 8 U.S.C. § 1105a(c) (requiring exhaustion of administrative remedies prior to review of an order of deportation or exclusion by any court); 8 U.S.C. § 1252(d) (requiring exhaustion of administrative remedies prior to review of a final order of removal by any court). *See generally Ademi v. INS*, 31 F.3d 517, 520 (7th Cir.1994) (rejecting alien's claim that the BIA failed to take administrative notice of changed conditions in the former Yugoslavia because administrative remedies must be exhausted prior to judicial review of deportation order and alien failed to raise his claim before the BIA); *Asencio v. INS*, 37 F.3d 614, 615–16 (11th Cir.1994) (holding that under 8 U.S.C. § 1105a(c), court lacked jurisdiction to consider claims not presented to the BIA because alien had obligation to exhaust available administrative remedies prior to obtaining judicial review).

■ Exhaustion generally is not required, however, for due process claims because the BIA does not have the authority to adjudicate constitutional issues. *Castaneda–Suarez v. INS*, 993 F.2d 142, 144 (7th Cir.1993). There is thus an exception to the exhaustion requirement for

8. Courts treat the exhaustion requirement as jurisdictional. *See, e.g., Perez–Rodriguez v. INS*, 3 F.3d 1074, 1080 (7th Cir.1993).

9. Unless the futility exception (or some other exception) applies, the exhaustion doctrine typically requires that aliens raise all their arguments before the BIA or face a finding of waiver.

constitutional claims. But there is also an exception to the exception: exhaustion is still required, even for a constitutional issue, when a petitioner's claim involves "procedural errors correctable by the administrative tribunal." *Id.* (quoting *Vargas v. INS*, 831 F.2d 906, 906 (9th Cir. 1987)). In *Castaneda–Suarez*, the Seventh Circuit found a petitioner's claim of ineffective assistance of counsel to be one of these claims amenable to administrative correction and declined to address it prior to allowing the BIA an opportunity for review.

Although the court believes that Moro's futility argument raises serious concerns, it is not willing at this stage to find that pursuit of the appeal before the BIA is futile. For one thing, Moro does not cite any case law in which a court has found pursuit of an administrative appeal futile before a decision in that appeal could be handed down.[10] For another, Moro has provided no support for his assertions of futility. But neither is the court ready to accept the government's argument that Moro has failed to exhaust his administrative remedies, since the court has no idea how much time the BIA plans to take before deciding Moro's bond appeal.

Moreover, the court submits that the exception to the exhaustion requirement applies to this case, in which event Moro's futility argument may be beside the point. Moro's claim that his detention is excessive, disproportionate, and unrelated to any legitimate, attainable goal or purpose sounds in due process. Accordingly, even if Moro has sufficiently raised this claim before the BIA, it appears to this court that the BIA has no authority to entertain it.[11] If this is so, then the government's exhaustion argument is inapplicable, at least insofar as Moro's Petition is based on these due process arguments. Taking all of these considerations into account, the court reserves decision on the exhaustion issue at this time but wishes to bring these and the following points to the parties' attention.

As an initial matter, the court notes that this case differs from the statutory provisions and case law cited above because Moro seeks to challenge his continued detention rather than his removal order. Nevertheless, the court believes that it is appropriate to apply the principle of administrative exhaustion in this case, especially in light of Moro's decision to appeal the IJ's decision to the BIA.[12] The case is

10. The bulk of the case law of which the court is aware appears to address situations in which a petitioner forewent administrative appeal and brought his or her claim directly to the district court, arguing that the administrative appeal would have been futile. The court is also aware of analogous case law in which a petitioner brought an appeal in another forum but then dismissed that appeal in light of adverse decisions in similar cases. *See, e.g., Schindler v. Clerk of Circuit Court*, 715 F.2d 341, 342 (7th Cir.1983) (petitioner timely appealed to state supreme court but voluntarily dismissed appeal when that court rejected an identical challenge in another case, at which point petitioner filed a habeas petition in district court). Moro, of course, neither forewent administrative appeal of the IJ's denial of bond nor dismissed his appeal in light of any asserted uniform body of adverse case law.

11. The administrative record indicates that Moro's appeal to the BIA primarily addresses whether the IJ erred in denying bond based

on his assertions that 1) his family circumstances had changed (due to the behavioral problems of his son and the illness of his wife); 2) the TPCR, not the MCR, are applicable to his case; and 3) he should be released pursuant to the TPCR. Although Moro did raise an indefinite detention claim in his brief on appeal, he did so in a very abbreviated form, devoting a total of two sentences to the argument, which stated that "[e]ven if the IJ did not view the medical problems as presently comprising a compelling case for changed circumstances, he still should have granted the Motion based on the futility of continuing to detain Respondent. Since no country will ever accept him into its borders, the Service may indefinitely confine him." Moro's Brief to the BIA at 4.

12. Had Moro sought judicial review of the IJ's decision to deny bond directly in this court, rather than first appealing to the BIA, the court might have been more sympathetic to his argument that such appeals are futile. Although Moro may have brought the appeal

now before the BIA and appears, from the administrative record, to have been fully briefed since March 24, 1999, the date of INS's reply brief.[13]  Under these circumstances, the court believes that the BIA should be given a reasonable opportunity to decide Moro's appeal.  Given the nature of the issue on appeal, however—whether bond should have been granted—the court believes it would be unreasonable to require Moro to wait for months, especially in light of Moro's allegations in this court that his detention could continue indefinitely, given the government's alleged inability to remove him to any country.

The court is also troubled by the question of how much time may pass before appeal of a bond issue to the BIA effectively becomes futile.[14]  Points that weigh in favor of the government's position include the following:  declining to exercise jurisdiction over Moro's claim prior to a decision by the BIA 1) would not foreclose judicial review entirely;  2) would prevent the short-circuiting of the administrative process, *see, e.g., Aircraft & Diesel Equipment Corp. v. Hirsch*, 331 U.S. 752, 773–74, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); and 3) might prevent duplication of time and effort in this case.  In Moro's favor are the points mentioned above, namely, his contention that 1) the BIA routinely affirms denial of bond;  and 2) in his case, where the specter of indefinite detention looms and the government has long known that it would be unable to deport him, serious due process concerns are implicated by any further delay.

The court's preliminary conclusion that the custody challenge Moro brings in his Petition falls within the exception to the exhaustion doctrine does not alter its belief that giving the BIA a reasonable opportunity to decide this case is appropriate.

First, the court notes that Moro chose to appeal the IJ's denial of his request for a redetermination of bond to the BIA.  In that appeal, Moro presses non-constitutional issues which, if resolved by the BIA in his favor, obviate the need for review in this court.  Second, in light of the judicial canon counseling avoidance of difficult constitutional questions unless necessary, the court believes the best way to handle this case is to permit the BIA a reasonable period of time to decide Moro's appeal.

The court requests further briefing by the parties including, but not necessarily limited to, the issues outlined above and the questions set forth below.  In court on May 7, the government agreed to request the BIA to expedite its decision on Moro's appeal.  The court also requested that the government ask the BIA when it might hand down a decision in this case.  The court now requests that the government file a memorandum by May 28 regarding the issues raised in this Opinion as well as the BIA's response, if any, to these questions.  In the event that the BIA fails to indicate that it will act on Moro's appeal within a reasonable period of time, the court may conclude that Moro's futility argument is well taken.  If Moro wishes to respond, he may do so by June 7, and he should include relevant support for his assertion that the BIA routinely affirms immigration judges' denial of bail for criminal aliens.

### 3.  *Bases for Jurisdiction*

In the event that the court rejects the government's exhaustion argument, it will find that it has jurisdiction over Moro's challenge to his continued detention.  As noted above, although the statutory scheme authorized and required Moro's

---

to be "on the safe side," his decision to bring the appeal cuts against his argument that bringing such appeals is futile.

**13.**  On January 25, 1999, the BIA set a briefing schedule on Moro's appeal, ordering Moro to submit a brief by February 24, 1999 and INS to respond by March 26, 1999.  Both

parties timely complied with the BIA's order, and the matter has been fully briefed for about a month and a half as of the date of this Opinion.

**14.**  Moreover, the court notes that excessive delay by the BIA in deciding a bond appeal might itself raise a due process issue.

detention during the removal period, 8 U.S.C. § 1231(a)(2), and now authorizes his continued detention after the removal period, *id.* § 1231(a)(6), these findings do not dispose of Moro's challenge to the constitutionality of these provisions. As an initial matter, the court notes that § 1231 (governing detention of aliens ordered removed), unlike § 1226 (governing detention of aliens pending decision on removal), does not contain any potentially relevant subsection addressing judicial review.[15] Accordingly, there appears to be no bar to this court's review of Moro's custody challenge, given that the court has rejected the government's invocation of § 1252(g) as a bar to its jurisdiction.

Even if § 1231 did, however, contain a relevant judicial review provision, the Seventh Circuit's recent decision in *Parra* indicates that district courts retain jurisdiction under 28 U.S.C. § 2241 at least over constitutional challenges to custodial provisions of the INA, if not over challenges to specific operational decisions implementing those custodial provisions that Congress has chosen to remove from the ambit of judicial review. *Parra,* 172 F.3d 954, 957–58 (holding that although district courts lack jurisdiction under § 2241 to consider challenges to certain operational decisions implementing § 1226, district courts have § 2241 jurisdiction over challenges to § 1226 itself, that is, over constitutional challenges to the legislation establishing the framework for those operational decisions).

Given the court's finding that it has jurisdiction over Moro's custody challenge under § 2241 (absent a finding in the government's favor on exhaustion), the court need not now decide whether it also has jurisdiction under the Great Writ. The court notes, however, that *Parra* suggests that this court may also have jurisdiction under the Great Writ, Art. I, § 9, cl. 2. The Great Writ is a "device designed to prevent detention by the Executive Branch without trial." *Parra,* 172 F.3d 954, 957–58. Like subsection 1226(c), which the Seventh Circuit found authorizes detention without trial, *id.,* subsections 1231(a)(2) and 1231(a)(6) also authorize detention by the Executive Branch without trial. Moreover, Moro claims that his detention has no end in sight given his status as a stateless alien. He thus falls squarely within one of the categories the Seventh Circuit identified in *Parra* as within the ambit of the Great Writ. *Id.* (explaining that "it is easy to imagine cases—for example, claims by persons detained under § 1226(c) ... who are detained indefinitely because the nations of which they are citizens will not take them back-in which resort to the Great Writ may be appropriate"). Unlike the criminal alien in *Parra,* Moro contends that he cannot end his detention; he does not have "the keys in his pocket," for he has no identity documents and Yugoslavia will not accept him. *Id.*

## C. *Constitutionality of Moro's Continued Detention*

The government has also argued that, even if this court finds it has jurisdiction, Moro is not entitled to relief for two reasons. First, the government argues that Moro has no fundamental right to be released. According to the government, Moro's custody is neither unconstitutional nor in violation of the immigration laws and regulations. Second, the government argues that Moro's custody fosters a legitimate governmental purpose, specifically, by ensuring his presence at the time his removal order is executed, thereby fostering his efficient and expeditious removal.

In light of the court's reservation of decision on the exhaustion issue, the court declines to address these arguments at this time but will, if necessary, rule on these arguments at a later date.

---

**15.** Section 1226 contains a subsection prohibiting judicial review of specified operational decisions made by the Attorney General. 8 U.S.C. § 1226(e); *Parra,* 172 F.3d 954, 957–58. By contrast, the only provision in § 1231 that is related to judicial review appears designed to ensure that aliens sentenced to imprisonment serve their sentence before being removed and thus seems inapplicable to this case. 8 U.S.C. § 1231(a)(4)(D).

## III. *CONCLUSION*

Having carefully reviewed the statutory scheme and the parties' filings, the court concludes that the statutory provisions the government has cited do not bar the exercise of jurisdiction in this case. However, the court reserves decision at this time as to whether Moro's alleged failure to exhaust his administrative remedies precludes the exercise of jurisdiction over this case and requests an additional response from the parties directed to the points summarized below. The government should file its supplemental memorandum by May 28; if Moro wishes to respond, he must do so by June 7.

In its memorandum, the government should inform the court of what response, if any, it has received from the BIA regarding the requests it agreed to make in court on May 7. The court needs to know whether the BIA has agreed to expedite Moro's appeal and how much time the BIA anticipates will pass before deciding that appeal. The court reminds the parties, however, that under the circumstances of this case, it believes that the BIA should be given a reasonable opportunity to decide Moro's appeal.

Both the government and Moro should address the issue of how much time may pass before appeal of the bond issue to the BIA becomes futile. In addition, Moro should include support for his assertion that the BIA routinely affirms denial of bail for criminal aliens.

Finally, if Moro believes that the TPCR are applicable to his case and relevant to the proceedings *in this court, see supra* n. 7, he should brief this issue, indicating clearly what provisions, rules, or regulations he believes are applicable and also indicating whether he disagrees with the court's conclusion that 8 U.S.C. § 1231 governs this case.