IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14240
_____

D.C. Docket No. 6:10-cv-00280-ACC-GJK


ANESH GUPTA,

                                                    Plaintiff - Appellant,

versus

RICHARD T MCGAHEY,
Senior Special Agent, U.S. Immigration
and Customs Enforcement,
TIMOTHY WARGO,
Supervisory Special Agent, US Immigration
and Customs Enforcement (ICE),
JOHN KAUFMAN,
Special Agent, US Immigration
 and Customs Enforcement (ICE),

                                                    Defendants - Appellees,

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et al.,

                                                    Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

ORDER ON REHEARING EN BANC

Before CARNES, Chief Judge, TJOFLAT, DUBINA, BARKETT, HULL, MARCUS, WILSON, PRYOR, MARTIN, and JORDAN, Circuit Judges.[*]

BY THE COURT:

A member of this Court in active service having requested a poll on whether this case should be reheard by the Court sitting en banc, and a majority of the judges in active service on this Court having voted against granting a rehearing en banc, IT IS ORDERED that the Suggestion of Rehearing En Banc is DENIED.

_____
CHIEF JUDGE

---

[*] As an active judge of this Court at the time the en banc poll was conducted, Judge Barkett participated in this case. See Fed. R. App. P. 35, 11th Cir. IOP 7. Because she retired from service on September 30, 2013, she did not participate in the consideration of this case after that date.

WILSON, Circuit Judge, concurring in the denial of rehearing en banc:

I was on the panel that heard and decided this appeal.  While I do not join Judge Martin's strong dissent, I agree that *Bivens* relief should not be categorically denied whenever the government can tangentially relate the alleged violation to removal proceedings.  I also agree that *if* our opinion had cut off *Bivens* relief in this manner, then this appeal would present a question of "exceptional importance" justifying consideration by the entire court.  Fed. R. App. P. 35, 11th Cir. R. 35-3.  Ultimately, I do not join the dissent because I do not believe this is what our panel opinion does.

Far from announcing a categorical rule that "shield[s] from federal judicial oversight" a range of "law enforcement abuse" that is only tangentially related to removal proceedings, Dissenting Op. at 6, our panel opinion merely affirmed the district court's determination that it lacked subject matter jurisdiction "to allow a *Bivens* action *in this context*," *Gupta v. McGahey*, 709 F.3d 1062, 1064 (11th Cir. 2013) (emphasis added).[1]  This context involved arrest, detention, searches, and seizures directly related to removal proceedings and the offense that prompted officials to deem removal proceedings necessary.  There was no evidence of pretext.  There was no evidence of egregious conduct.  There was no evidence that

---

[1] Our panel opinion explicitly and consistently narrowed the scope of its holding to "this context."  On appeal, Gupta "also argues that the district court should have recognized his *Bivens* action *in this context*." *Gupta*, 709 F.3d at 1064 (emphasis added).

3

the searches and seizures were unrelated to the desire to remove Gupta, though to be sure there was an additional purpose of promoting public safety.  In this instance, critically, the animating goal of the officers was to remove Gupta.

The dissent states that our decision has no limiting principles, Dissenting Op. at 6, but that is merely because the case did not present us with an opportunity to establish limiting principles.  Indeed, limiting principles are mandated by one of the most basic tenets of our constitutional jurisprudence: "[W]here there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (internal quotation marks omitted).  And this court has established that even aliens subject to removal proceedings have rights under the Constitution.  *See Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010) (per curiam) (noting that aliens are entitled to due process of the law in removal proceedings); *Garcia v. Att'y Gen. of U.S.*, 329 F.3d 1217, 1223 (11th Cir. 2003) (per curiam) (noting that aliens "have the right to effective assistance of counsel at deportation proceedings").

If a future case arises where removal proceedings are used as pretext to shield law enforcement abuses from federal judicial oversight, or where the conduct is more egregious, or where it is less related to the commencement of removal proceedings, then we will have occasion to announce limiting principles consistent with well-established jurisprudence.  Should the scenario come along

4

where an alien is, for example, physically beaten during the course of what ought to be a peaceful arrest arising from a decision to commence removal proceedings, judicial review would likely be necessary because I am able to discern no mechanism within the INA's administrative scheme to remedy the wrong. *See, e.g.*, *Turkmen v. Ashcroft*, 915 F. Supp. 2d 314, 353 (E.D.N.Y. 2013) (holding that the INA administrative scheme provides no appropriate remedy for detainees whose religious rights have been "intentionally and maliciously" violated). In such circumstances, our panel opinion does not constitute precedent that will unconditionally bar aliens from seeking relief from egregious constitutional violations.

Nothing in our opinion states that it should be read as broadly as Judge Martin suggests, and I take the words "in this context" as an express acknowledgment that the rule applied in our panel's opinion should be limited by the facts of the case. Our opinion held that for "'any . . . claim . . . arising from the decision or action by the Attorney General to commence [removal] proceedings,'" § 1252(g) bars federal court jurisdiction. *Gupta*, 709 F.3d at 1065 (quoting 8 U.S.C. § 1252(g)). The dissent fears that our panel's opinion will be erroneously extended—perhaps based on the broad scope of the word "any" but without accounting for the limiting words "arising from"—beyond the factual scenario at issue in this case. If and when that error is made, we will have occasion to correct

5

the error and set limiting principles with more precision.[2]  Our panel's decision is

correct in this limited context.

---

[2] Without announcing any such principles—because, again, this case does not present us with the opportunity to do so—I note that law enforcement brutality and pretextual arrests do not "arise from" a decision to "commence [removal] proceedings" because such activities are entirely unnecessary to accomplish removal.  Thus, if those activities occur, it cannot be said that they arose from the decision to commence removal proceedings even though they would be tangentially related to removal.

MARTIN, Circuit Judge, dissenting from the denial of rehearing en banc:

I respectfully dissent from the denial of rehearing en banc. In Mr. Gupta's case, the Panel concluded that 8 U.S.C. § 1252(g) bars us from considering his Fourth and Fifth Amendment Bivens claims. However, the panel opinion does not explain why this is so. Indeed, the panel opinion is so bare of analysis that its discussion of this point cites no cases—not even Reno v. American-Arab Anti-Discrimination Committee, which is the seminal Supreme Court case addressing § 1252(g)'s scope. 525 U.S. 471, 119 S. Ct. 936 (1999) (AADC). Thus, relying upon little more than bald assertions and self-reinforcing statements, the panel opinion closes the courthouse doors to a broad swath of tort and constitutional claims. I believe Mr. Gupta's case deserves more thorough consideration. Beyond that, this case presents such important and novel issues that en banc rehearing is necessary and appropriate.

## I.

First, I cannot agree with the Panel's conclusion that 8 U.S.C. § 1252(g) unambiguously bars our consideration of Mr. Gupta's claims because they arise from "action[s] taken to commence proceedings." Of course it is true § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim . . . arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien."

However, it is hard to understand how the decisions to arrest Mr. Gupta, to detain him, and to search his home and automobile were related in any way to the commencement of removal proceedings against him.

In AADC, the Supreme Court warned us repeatedly that § 1252(g) is to be read narrowly. The Court instructed us that § 1252(g) does not apply to the "universe of deportation claims." 525 U.S. at 482, 119 S. Ct. at 943. Instead, § 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" Id. (quoting 8 U.S.C. § 1252(g)). Indeed to emphasize and illustrate this point, the Supreme Court listed a number of decisions and actions for which Article III jurisdiction would lie. Id. (noting that courts still can review "the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order"). This list illustrates how § 1252(g) is not a "shorthand way of referring to all claims arising from deportation proceedings." Id.

Especially in light of the Supreme Court's mandate to read § 1252(g) narrowly, I dispute the Panel's finding that Mr. Gupta's claims all arose from actions to commence proceedings. We know that, for example, the commencement of proceedings did not require the actions taken by law

8

enforcement against Mr. Gupta here.  See 8 U.S.C. § 1226(a) (explaining that in most circumstances, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added)); 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the notice to appear . . . the respondent may be arrested and taken into custody . . . ." (emphasis added)).  We also know from the Record of Deportable Alien and Notice of Appearance that Mr. Gupta lost his immigration status in July 2009, weeks before the claims asserted in his Bivens action materialized.  Said another way, even if Mr. Gupta had never been arrested or detained, and even if his things had not been searched and seized, the removal proceedings against him could and would have still begun (in the language of the statute "commenced").

It is also important to keep in mind that barring Mr. Gupta's claims here does nothing to further the limited purposes of the § 1252(g) jurisdictional bar.  In AADC, the Supreme Court explained that § 1252(g) was strictly designed to shield prosecutorial discretion from review, as opposed to any and all executive action tangentially related to the commencement of proceedings.  525 U.S. at 485 n.9, 119 S. Ct. at 944 n.9 ("It was the acts covered by § 1252(g) that had prompted challenges to the Attorney General's exercise of prosecutorial discretion.").  In particular, § 1252(g) was "specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings."  Id. at 487, 119 S.

9

Ct. at 945.  Mr. Gupta's <u>Bivens</u> claims, however, do not in any way challenge the

Attorney General's discretion to commence removal proceedings.  Nor would Mr.

Gupta's suit prolong his removal proceedings or delay his removal, because he can

continue to litigate his civil rights claims from abroad if he is removed before the

litigation is over.  Based on these things, I do not agree that Mr. Gupta's claims are

barred by § 1252(g).

## II.

Setting aside for now the question of whether the Panel arrived at the proper

result for Mr. Gupta, it is the Panel's cursory approach in deciding his case that is

most troubling.  The panel opinion states that Mr. Gupta's claims fall into two

categories: (1) actions taken to secure Mr. Gupta and (2) those taken to prevent

potential danger to Disney World, as a Critical Infrastructure asset.  Then without

explanation or analysis, the Panel simply concludes that both of these categories

are easily classified as "actions" that "commence[d] removal proceedings."  As

I've said, this portion of the opinion contains no case citations, not even to <u>AADC</u>,

which is the leading case on the interpretation of § 1252(g).  Because the opinion

reflects no analysis or meaningful reasoning, the result it reaches seems obvious

and easy.

However, the problem presented by Mr. Gupta's case does not lend itself to

an easy or self-evident result.  In fact, courts considering this issue have broken

10

both ways. Compare Khorrami v. Rolince, 493 F. Supp. 2d 1061, 1068 (N.D. Ill. 2007) (claims for illegal arrest and detention barred by § 1252(g) because they are a "direct outgrowth" of the decision to commence proceedings), with Parra v. Perryman, 172 F.3d 954, 957 (7th Cir. 1999) (noting that § 1252(g) did not bar alien's habeas claim concerning detention); Diaz-Bernal v. Myers, 758 F. Supp. 2d 106, 125 (D. Conn. 2010) (holding that Fourth Amendment claims against raid officers did not involve commencement, adjudication, or execution of removal proceedings); El Badrawi v. Dep't of Homeland Sec., 579 F. Supp. 2d 249, 266 (D. Conn. 2008) (holding that decision to detain and arrest is "discrete" from the decision to commence removal proceedings). Very few courts have found—like the panel opinion—that the questions involved here are "unambiguous" based on a plain reading of § 1252(g). See, e.g., Humphries v. Various Fed. USINS Emps., 164 F.3d 936, 942–43 (5th Cir. 1999) ("In determining whether any of Humphries' remaining claims . . . 'arise from' certain decisions or actions, we find little assistance in the precise language of the statute. Congress has provided no explicit definition of the phrase 'arising from,' and courts have not always agreed on its plain meaning." (alterations omitted)); Khorrami, 493 F. Supp. 2d at 1068–69 ("I note that I am not at all certain that this is the type of claim Congress sought to bar when it enacted § 1252(g)."). Based on this statute's potential for conflicting interpretations, an en banc rehearing would have been helpful to produce an

11

opinion that more fully explains itself, thus giving meaningful guidance to courts and future litigants, even if it arrived at the same result.

### III.

To summarize, I dissent to the denial of en banc review because I am concerned about the potential implications of the panel opinion. It lacks limiting principles to such an extent that I fear it could be read to bar federal courts from considering any tort or constitutional claims arising during a search or an arrest, so long as the government claims it is tangentially related to the decision to commence removal proceedings. It does not take a particularly active imagination to envision the types of law enforcement abuse that could be shielded from federal judicial oversight as a result of this decision. See Webster v. Doe, 486 U.S. 592, 603, 108 S. Ct. 2047, 2053 (1988) (warning that serious constitutional questions would arise if a "federal statute were construed to deny any judicial forum for a colorable constitutional claim").

At a minimum, those who come to our federal courts to claim their rights under our Constitution should have a more thorough explanation about why Article III judges are barred from hearing even valid claims. We can and should do better.