MARTIN, Circuit Judge,
dissenting from the denial of rehearing en banc:
I respectfully dissent from the denial of rehearing en banc. In Mr. Gupta’s case, *697 the Panel concluded that 8 U.S.C. § 1252(g) bars us from considering his Fourth and Fifth Amendment Bivens claims. However, the panel opinion does not explain why this is so. Indeed, the panel opinion is so bare of analysis that its discussion of this point cites no cases — not even Reno v. American-Arab AntiDiscrimination Committee, which is the seminal Supreme Court case addressing § 1252(g)’s scope. 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (AADC). Thus, relying upon little more than bald assertions and self-reinforcing statements, the panel opinion closes the courthouse doors to a broad swath of tort and constitutional claims. I believe Mr. Gupta’s case deserves more thorough consideration. Beyond that, this case presents such important and novel issues that en banc rehearing is necessary and appropriate.
I.
First, I cannot agree with the Panel’s conclusion that 8 U.S.C. § 1252(g) unambiguously bars our consideration of Mr. Gupta’s claims because they arise from “aetion[s] taken to commence proceedings.” Of course it is true § 1252(g) provides that “no court shall have jurisdiction to hear any cause or claim ... arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien.” However, it is hard to understand how the decisions to arrest Mr. Gupta, to detain him, and to search his home and automobile were related in any way to the commencement of removal proceedings against him.
In AADC, the Supreme Court warned us repeatedly that § 1252(g) is to be read narrowly. The Court instructed us that § 1252(g) does not apply to the “universe of deportation claims.” 525 U.S. at 482, 119 S.Ct. at 943. Instead, § 1252(g) “applies only to three discrete actions that the Attorney General may take: her ‘decision or action’ to ‘commence proceedings, adjudicate cases, or execute removal orders.’ ” Id. (quoting 8 U.S.C. § 1252(g)). Indeed to emphasize and illustrate this point, the Supreme Court listed a number of decisions and actions for which Article III jurisdiction would lie. Id. (noting that courts still can review “the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order”). This list illustrates how § 1252(g) is not a “shorthand way of referring to all claims arising from deportation proceedings.” Id.
Especially in light of the. Supreme Court’s mandate to read § 1252(g) narrowly, I dispute the Panel’s finding that Mr. Gupta’s claims all arose from actions to commence proceedings. We know that, for example, the commencement of proceedings did not require .the actions taken by law enforcement against Mr. Gupta here. See 8 U.S.C. § 1226(a) (explaining that in most circumstances, “an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.” (emphasis added)); 8 C.F.R. § 236.1(b)(1) (“At the time of issuance of the notice to appear ... the respondent may be arrested and taken into custody....” (emphasis added)). We also know from the Record of Deportable Alien and Notice of Appearance that Mr. Gupta lost his immigration status in July 2009, weeks before the claims asserted in his Bivens action materialized.- Said another way, even if Mr. Gupta had never been arrested or detained, and even if his things had not been searched and seized, the removal proceedings against him could *698 and would have still begun (in the language of the statute “commenced”).
It is also important to keep in mind that barring Mr. Gupta’s claims here does nothing to further the limited purposes of the § 1252(g) jurisdictional bar. In AADC, the Supreme Court explained that § 1252(g) was strictly designed to shield prosecutorial discretion from review, as opposed to any and all executive action tangentially related to the commencement of proceedings. 525 U.S. at 485 n. 9, 119 S.Ct. at 944 n. 9 (“It was the acts covered by § 1252(g) that had prompted challenges to the Attorney General’s exercise of pros-ecutorial discretion.”). In particular, § 1252(g) was “specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings.” Id. at 487, 119 S.Ct. at 945. Mr. Gupta’s Bivens claims, however, do not in any way challenge the Attorney General’s discretion to commence removal proceedings. Nor would Mr. Gupta’s suit prolong his removal proceedings or delay his removal, because he can continue to litigate his civil rights claims from abroad if he is removed before the litigation is over. Based on these things, I do not agree that Mr. Gupta’s claims are barred by § 1252(g).
II.
Setting aside for now the question of whether the Panel arrived at the proper result for Mr. Gupta, it is the Panel’s cursory approach in deciding his case that is most troubling. The panel opinion states that Mr. Gupta’s claims fall into two categories: (1) actions taken to secure Mr. Gupta and (2) those taken to prevent potential danger to Disney World, as a Critical Infrastructure asset. Then without explanation or analysis, the Panel simply concludes that both of these categories are easily classified as “actions” that “eom-mence[d] removal proceedings.” As I’ve said, this portion of the opinion contains no case citations, not even to AADC, which is the leading case on the interpretation of § 1252(g). Because the opinion reflects no analysis or meaningful reasoning, the result it reaches seems obvious and easy.
However, the problem presented by Mr. Gupta’s case does not lend itself to an easy or self-evident result. In fact, courts considering this issue have broken both ways. Compare Khorrami v. Rolince, 493 F.Supp.2d 1061, 1068 (N.D.Ill.2007) (claims for illegal arrest and detention barred by § 1252(g) because they are a “direct outgrowth” of the decision to commence proceedings), with Parra v. Perryman, 172 F.3d 954, 957 (7th Cir.1999) (noting that § 1252(g) did not bar alien’s habeas claim concerning detention); Diaz-Bernal v. Myers, 758 F.Supp.2d 106, 125 (D.Conn. 2010) (holding that Fourth Amendment claims against raid officers did not involve commencement, adjudication, or execution of removal proceedings); El Badrawi v. Dep’t of Homeland Sec., 579 F.Supp.2d 249, 266 (D.Conn.2008) (holding that decision to detain and arrest is “discrete” from the decision to commence removal proceedings). Very few courts have found— like the panel opinion — that the questions involved here are “unambiguous” based on a plain reading of § 1252(g). See, e.g., Humphries v. Various Fed. USINS Emps., 164 F.3d 936, 942-43 (5th Cir.1999) (“In determining whether any of Humphries’ remaining claims ... ‘arise from’ certain decisions or actions, we find little assistance in the precise language of the statute. Congress has provided no explicit definition of the phrase ‘arising from,’ and courts have not always agreed on its plain meaning.” (alterations omitted)); Khorrami 493 F.Supp.2d at 1068-69 (“I note that I am not at all certain that this is the type of claim Congress sought to bar when it enacted § 1252(g).”). Based on this stat *699 ute’s potential for conflicting interpretations, an en banc rehearing would have been helpful to produce an opinion that more fully explains itself, thus giving meaningful guidance to courts and future litigants, even if it arrived at the same result.
III.
To summarize, I dissent to the denial of en banc review because I am concerned about the potential implications of the panel opinion. It lacks limiting principles to such an extent that I fear it could be read to bar federal courts from considering any tort or constitutional claims arising during a search or an arrest, so long as the government claims it is tangentially related to the decision to commence removal proceedings. It does not take a particularly active imagination to envision the types of law enforcement abuse that could be shielded from federal judicial oversight as a result of this decision. See Webster v. Doe, 486 U.S. 592, 608, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 682 (1988) (warning that serious constitutional questions would arise if a “federal statute were construed to deny any judicial forum for a colorable constitutional claim”).
At a minimum, those who come to our federal courts to claim their rights under our Constitution should have a more thorough explanation about why Article III judges are barred from hearing even valid claims. We can and should do better.