**Abed Mosa BAIDAS, Petitioner,**

v.

**Carol JENNINGS, and Immigration and Naturalization Service, an agency of the United States Government, Respondent.**

No. Civ.A. 00–CV–72003–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 6, 1999.

Abed Mosa Baidas, Monroe, MI, plaintiff pro se.

Judith Levy, Assistant United States Attorney, Detroit, MI, for defendant.

1. The INA was amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). See Pub.L. No. 104–208, Div. C, Title III (Sept. 30, 1996). Sections 237(a)(2)(A)(i) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227, provide:

§ 1227. Deportable aliens

(a) Classes of deportable aliens.

Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: ...

(2) Criminal offenses ...

(A) General Crimes

(I) Crimes of moral turpitude

Any alien who—

(I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and

**1053**

*OPINION AND ORDER DENYING MOTION TO DISMISS AND GRANTING PETITION FOR WRIT OF HABEAS CORPUS*

COHN, District Judge.

## I. Introduction

Petitioner, Abed Mosa Baidas ("petitioner"), presently confined at the Monroe County Jail in Monroe, Michigan, has filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 alleging that he is confined in violation of his constitutional rights. In his application, petitioner challenges his detention pursuant to the Immigration and Nationalization Act ("INA") § 236(c), 8 U.S.C. § 1226(c) which mandates his detention without bond. Petitioner contends that 1) § 1226(c) does not apply to him because removal proceedings were initiated against him before the effective date of the statute, October 9, 1998 and 2) § 1226(c) violates the due process and equal protection clauses of the Fifth Amendment.[1] Petitioner seeks an order of this Court ordering his immediate release on personal recognizance pending review of his challenge to his current removal status.

(II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable....

(iii) Aggravated felony

Any alien who is convicted of an aggravated felony at any time after admission is deportable.

8 U.S.C. § 1226(c)(1) provides, in relevant part:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who—

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)($l$) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, when the alien is released.

Respondent contends that 1) this Court lacks jurisdiction to review petitioner's detention on the merits, except to determine his constitutional claims, 2) the petition should be dismissed because petitioner has failed to exhaust Bureau of Immigration ("BIA") administrative remedies, 3) mandatory detention of criminal aliens pursuant to INA § 236(c), 8 U.S.C. § 1236(c)(1) is constitutional, and 4) petitioner is not entitled to release from custody even if mandatory detention is unconstitutional, because he is a career criminal who would likely engage in serious and dangerous criminal activity if released.

## II. Background

Petitioner is a Jordanian national who was lawfully admitted to the United States on January 4, 1979, as a non-immigrant student.[2] He became a lawful permanent resident on June 7, 1982. According to petitioner, he is a construction management engineer, he has two United States citizen children and is responsible for their welfare and education, and he has substantial business and community ties in Michigan. On February 10, 1998, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, alleging that petitioner was subject to removal from the United States pursuant to INA § 237(a)(2)(A)(ii) and 8 U.S.C. § 1227(a)(2)(A)(ii), because he had been convicted of two or more crimes of moral turpitude.[3] Petitioner was released from INS custody on a $3,000 bond on February 24, 1998.

On August 31, 1998, while at large on bond from INS detention, petitioner was convicted of three new crimes.[4] Petitioner was sentenced on October 31, 1998, to a minimum two year prison term for these crimes and placed in the custody of the Michigan Department of Corrections ("MDOC").

The INS scheduled an initial removal hearing on October 28, 1998, based on the February 10, 1998, notice to appear. Petitioner's attorney appeared for him, as he was in state custody at the time. On January 27, 1999, the INS lodged additional charges to support its initial charging document.

On January 11, 2000, when Petitioner was released from MDOC incarceration, he was taken into INS custody pursuant to the mandatory detention provisions of INA § 236(c)(1)(B), 8 U.S.C. § 1226(c)(1)(B). On January 20, 2000, an immigration judge held a hearing and sustained the charges that petitioner was a removable alien because he had committed two or more crimes of moral turpitude. The immigration judge did not sustain a charge that petitioner was an aggravated felon.

On March 28, 2000, the immigration court held a bond hearing and found that

---

2. Petitioner asserts that his ethnic background is Palestinian, that he was born in Nablus, that he has spoken out against the Jordanian government, that he faces persecution if forced to return to Jordan, and is therefore eligible for asylum in the United States. See Petitioner's Reply to Respondent's Motion to Dismiss ("Petitioner's Reply") at 2–3. Because of the length of time petitioner has been a lawful permanent resident (over fifteen years before initiation of removal proceedings) and because the immigration judge did not find that he has been convicted of an aggravated felony, he is eligible to seek cancellation of removal. See 8 U.S.C. § 1229b(a).

3. Petitioner does not dispute that he has been convicted of crimes involving moral turpi-

tude. See Petitioner's Reply at 4. Petitioner was convicted in 1992 of two counts of attempted criminal sexual conduct in the third degree, M.C.L. § 750.520(d)(1)(B)(A). He was convicted in 1996 of attempted failure to return property over $ 100.00. M.C.L. § 750.362A-A(A).

4. The three new 1998 convictions were for passing a no account check, M.C.L. § 750.131(a), obtaining money or property by false pretenses, M.C.L. § 750.218(b), and passing a non-sufficient funds check over $200.00, M.C.L. § 750.131(c). Petitioner was sentenced as a habitual offender, M.C.L. § 769.11, to prison terms of one to four years, two to twenty years, and one to two years for these crimes respectively.

petitioner was subject to mandatory detention pursuant to INA § 236(c). Petitioner appealed his detention to the Bureau of Immigration Appeals ("BIA"), but withdrew his appeal before a decision was rendered. On May 23, 2000, the BIA returned petitioner's record to the immigration court without hearing or deciding his appeal.

Petitioner submitted a written application for relief from removal to the immigration judge on May 5, 2000. The judge set petitioner's case for trial on June 22, 2000. The trial began on June 22, 2000, but was not completed in its allotted time. Consequently, the case was continued until July 27, 2000. The parties have not informed this Court whether any subsequent immigration proceedings have transpired or are presently scheduled. Thus, it does not appear that a final order of removal has been entered. Petitioner remains in INS custody pursuant to the mandatory detention statute.

## III. Jurisdiction

Respondent contends that this Court lacks jurisdiction to consider any of petitioners' claims except his challenge the constitutionality of mandatory custody language pursuant to § 236(c)(1). Respondent cites *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir.1999), which held that 8 U.S.C. § 1226(e) precludes review of decisions to apply the provision and challenges to decisions to grant or deny bond, but does not preclude constitutional challenges to the provision itself. In addition to challenging the statute's constitutionality, petitioner asserts that the statute does not apply to him because removal proceedings were initiated before the statute's effective date and that he is not a flight risk or a threat to the community's safety.

8 U.S.C. § 1226(e) provides that:

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the determination or release of any alien or the grant, revocation, or denial of bond or parole.

■ Petitioner argues that he is being detained pursuant to § 236(c)(1)'s mandatory provisions, as opposed to any of the discretionary provisions contained in § 236, and therefore, judicial review is not prohibited by § 236(e). These contending arguments boil down to whether to interpret § 236(e), 8 U.S.C. § 1226(e), as a narrow jurisdictional restriction or whether to interpret it as a more general jurisdictional restriction.

In *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Supreme Court recently interpreted a similar jurisdictional stripping provision of the INA, 8 U.S.C. § 1252(g). That Section provides:

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Rather than holding that the provision was a general review-preclusion law, the Supreme Court interpreted the section narrowly, concluding that it covered only the three listed situations: decisions to commence proceedings, adjudicate cases, or execute removal orders. *See American–Arab*, 525 U.S. at 486, 119 S.Ct. at 945. Although the provision in *American–Arab* is not identical to the provision in this case, it is instructive in that it suggests that the Supreme Court would also interpret the jurisdictional language of § 236(e) narrowly.

Additionally, district courts that have interpreted § 236(e) have concluded that it does not bar district courts from retaining jurisdiction over petitioners of habeas cor-

pus relief. In *Velasquez v. Reno,* for example, the court reasoned that absent a clear and express statement that habeas jurisdiction has been modified, which § 236(e) did not provide, it would be improper to find that its 28 U.S.C. § 2241 statutory grant of jurisdiction had been repealed. 37 F.Supp.2d 663, 667–69 (D.N.J.1999). Moreover, an Oregon district court also recently determined that despite the jurisdictional limiting language in § 236(e), the court still retained jurisdiction to evaluate the petitioner's habeas corpus petition on the merits. See *Alwaday v. Beebe,* 43 F.Supp.2d 1130, 1132 (D.Or.1999); *see also Parra v. Perryman,* 172 F.3d at 957 (finding jurisdiction when the petitioner contended that § 236(c) violated the Due Process Clause of the Fifth Amendment).

With these cases in mind, the Court now turns to the plain language of § 236 in determining whether the jurisdictional stripping language in § 236(e) applies only to discretionary decisions of the Attorney General. *See American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) (stating that in cases of statutory construction, courts must consider the language employed by Congress, and absent any clearly expressed legislative intention to the contrary, the language must be regarded as conclusory). Such would be the case if some of the language in § 236 speaks to "discretionary" decisions while other phrases refer to "mandatory" requirements.

After reviewing § 236 as a whole, it is clear that the section differentiates between what the Attorney General is required to do, and what the Attorney General may opt to do. The language in some subsections provides that the Attorney General "may" take action, whereas the language in other subsections provides that the Attorney General "shall" take certain action. Compare 8 U.S.C. §§ 1226(a), (b), and (c)(2) with 8 U.S.C. §§ 1226(c)(1) and (d). In light of these differences, it

makes sense that when Congress provided in § 236(e) that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review" it meant just that and nothing more.

Noting the current trend of other district courts that have ruled on the statutory language at issue, and after carefully reviewing the plain language contained in § 236, the Court finds that § 236(e) of the INA has not stripped away its jurisdictional authority to consider the merits of petitioner's claims that § 236(c) was inapplicable to his because proceedings against him were started before its effective date and that the statute's mandatory detention provisions are unconstitutional. *Alwaday v. Beebe,* 43 F.Supp.2d 1130, 1132 (D.Or. 1999) (finding jurisdiction to consider whether mandatory detention statute applies to alien released from incarceration before statute's effective date); *Martinez v. Greene,* 28 F.Supp.2d 1275, 1277–78 (D.Colo.1998) (finding jurisdiction to consider whether mandatory detention provisions of § 236(c) violated constitutional right to due process of law on its face).

## IV. Exhaustion of Administrative Remedies

Respondent contends that petitioner has failed to exhaust administrative remedies by withdrawing his appeal of his bond denial.

■ An alien must generally exhaust all available administrative remedies before seeking review of a final order of removal. See 8 U.S.C. § 1252(d). However, petitioner is not seeking review of a removal order. Rather, he seeks review of the INS's decision to keep him in mandatory detention while he awaits a final determination whether or not he will be removed from the United States. This distinction is significant, because there is no federal statute that imposes an exhaustion requirement on aliens taken into custody pending their removal. *Montero v. Cobb,* 937 F.Supp. 88, 91 (D.Mass.1996);

*Galvez v. Lewis,* 56 F.Supp.2d 637, 644 (E.D.Va.1999). Since exhaustion is not required by statute, sound judicial discretion must govern this Court's decision of whether to exercise jurisdiction absent exhaustion. *See McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

The Supreme Court has instructed that district courts need not require exhaustion of administrative remedies when the administrative body has predetermined the issue before it. *See id.* at 148, 112 S.Ct. 1081. Petitioner contends that exhaustion of administrative remedies would be futile. This Court agrees. The BIA has already ruled, in an en banc proceeding, that the Transition Period Custody Rules enacted by § 303(B) of the IIRIRA apply to aliens who were released from incarceration prior to the Rules' effective date. Because the Transition Period Custody Rules include mandatory detention language similar to the language in § 236(c) of the INA, it is probable that the BIA would deny any challenge to the mandatory detention provisions of § 236(c). *See In re Garvin-Noble,* Int.Dec. 3301, 1997 WL 61453 (BIA1997). This Court concludes that, because petitioner is not challenging an order of removal, but instead, challenges his continued detention under § 236(c), the statute does not mandate exhaustion of administrative remedies. *See, Phan v. Reno,* 56 F.Supp.2d 1149, 1153 (W.D.Wash. 1999).

Moreover, exhaustion is generally not required for due process challenges to the statute, because the BIA does not have the authority to adjudicate constitutional issues. *Castaneda–Suarez v. INS,* 993 F.2d 142, 144 (7th Cir.1993).

The Court concludes that it is highly likely that the BIA would uphold the mandatory detention provisions of § 236(c) and therefore an appeal to the BIA would be futile for petitioner. The Court also notes that, in several challenges to mandatory detention pursuant to § 236(c), other district courts have exercised jurisdiction even though the petitioner failed to exhaust administrative remedies. *Son Vo v. Greene,* 109 F.Supp.2d 1281, 1281–82 (D.Colo.2000); *Alwaday v. Beebe,* 43 F.Supp.2d at 1132; *Welch v. Reno,* 101 F.Supp.2d 347, 350–51 (D.Md.2000). In light of the lack of statutory requirement of exhaustion in cases challenging detention pending issuance of a final removal order, the probable futility of petitioner's arguments before the BIA, and the current trend of district court cases, this Court shall exercise jurisdiction over petitioner's challenge to the application of § 236(c) to him and the constitutionality of the statute, despite petitioner's failure to exhaust administrative remedies.

## V. Merits of petitioner's claims

Having determined that this Court may exercise jurisdiction over petitioner's habeas petition, the Court must now look at the merits of his arguments.

### A. Applicability of § 236(c) to petitioner

■ Petitioner first contends that under a plain reading of § 236(c), the provision does not apply to him because removal proceedings were initiated against him when he was released from state custody on February 10, 1998, well before the effective date of the act, October 9, 1998. The thrust of this argument is that the mandatory detention provision of the INA, § 236(c), should not be applied to him because removal proceedings were started upon his release from state custody before the statute went into effect, and if Congress intended for § 236(c) to be applied retroactively, it would have said so.

It is true that petitioner was first detained before the effective date of § 236(c). However, petitioner was released on bond after this detention. His initial detention was not pursuant to the mandatory detention provisions of § 236(c).

Petitioner was detained under the mandatory detention provisions of § 236(c) after he was convicted of new crimes, rein-

carcerated in state custody, and released again on January 11, 2000. That date was well after the effective date of § 236(c). Therefore, this Court concludes that the mandatory detention provisions of § 236(c) apply to petitioner, because he was released from his most recent state custody for criminal convictions and then taken into INS custody after the effective date of § 1226(c).

## B. Due process challenge to § 1226(c)

Petitioner contends that § 1226(c)'s mandatory detention provision violates his Fifth Amendment right to due process of law. Petitioner submits that, before he may be detained indefinitely in removal proceedings, he is entitled, at least, to an individualized determination that he is either a flight risk or a danger to the community. Respondent replies that 1) petitioner is a habitual criminal with little or no likelihood of being permitted to remain in the United States with no federal constitutional right to bail or any individualized assessment of fitness for temporary release and 2) § 1226(c) is constitutional on its face and as applied to petitioner.

■ It is well-established that aliens have a right to due process of law under the Fifth Amendment. *See Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Chi Thon Ngo v. INS,* 192 F.3d 390, 396 (3d Cir.1999). However, it is also well established that Congress has broad powers over immigration and may " 'make[ ] rules that would be unacceptable if applied to citizens.' " *Chi Thon Ngo,* 192 F.3d at 395–96 (quoting *Mathews v. Diaz,* 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)).

Federal district courts have divided over the question of whether the mandatory detention provisions violate an alien's due process rights. *See e.g., Danh v. Demore,* 59 F.Supp.2d 994, 1001–05 (N.D.Cal.1999) (mandatory detention provisions violate due process); *Van Eeton v. Beebe,* 49 F.Supp.2d 1186, 1190 (D.Or.1999) (same); *Martinez v. Greene,* 28 F.Supp.2d 1275,

1282–84 (D.Colo.1998) (same); *Bouayad v. Holmes,* 74 F.Supp.2d 471, 473–76 (E.D.Pa.1999) (same); *Son Vo v. Greene,* 109 F.Supp.2d 1281, 1282–83 (D.Colo.2000) (same); *Chamblin v. INS,* 1999 WL 803970 (D.N.H.) (Report and Recommendation) (Muirhead, M.J.). *But see, e.g., Galvez v. Lewis,* 56 F.Supp.2d 637, 646–49 (E.D.Va.1999) (mandatory detention provisions are constitutional); *Diaz–Zaldierna v. Fasano,* 43 F.Supp.2d 1114, 1118–21 (S.D.Cal.1999) (same); *Sierra–Tapia v. Reno,* 1999 WL 803898 (S.D.Cal.) (same).

The only circuit that has confronted this issue squarely, the Seventh Circuit, upheld 8 U.S.C. § 1226(c) on the grounds that a fundamental liberty interest was not implicated. *See Parra,* 172 F.3d at 958. This court declines to follow *Parra* and joins those courts finding that the mandatory detention provisions are unconstitutional.

■ Petitioner's fundamental right to liberty is unconstitutionally abridged by the mandatory detention provisions. *See Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause"). The government argues, and the court recognizes, that petitioner does not have an absolute right to liberty. Certainly Congress may hold aliens in custody during the pendency of removal proceedings against them. *See Flores,* 507 U.S. at 302, 113 S.Ct. 1439; *Carlson v. Landon,* 342 U.S. 524, 543, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (holding that aliens in deportation proceedings who, in the discretion of the Attorney General, posed a risk to the community because of communist activity could be detained).

However, 8 U.S.C. § 1226(c) imposes an absolute restriction on petitioner's liberty and forecloses any possibility of a hearing on the necessity of his detention. *See Danh,* 59 F.Supp.2d at 1003 (framing the right implicated by 8 U.S.C. § 1226(c) as "the modest right to an individualized bond

determination regarding whether release pending deportation is appropriate").

As the Third Circuit recognized in *Chi Thon Ngo*, due process demands an underlying justification for the detention of aliens. The petitioner in *Chi Thon Ngo* was an alien whose order of removal was final but who was still detained in the United States because his native country, Vietnam, refused to accept him. *See Chi Thon Ngo*, 192 F.3d at 392. The court emphasized the need for an individualized evaluation of the petitioner's detention: "The process due even to deportable and excludable aliens requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight." *Id.* at 398. The court held that the petitioner's continued detention did not violate due process as long as there was a possibility of the alien's eventual departure, there were adequate and reasonable provisions for the grant of parole by INS, and the detention was necessary because of risk of flight or threat to the community. *See id.* at 397. Petitioner, who is not yet under a final order of removal, and is eligible to apply for cancellation of removal, also deserves an individual evaluation regarding his continued detention.

The government argues that mandatory detention protects the public from criminal aliens, particularly apparent recidivists such as petitioner, who are in removal proceedings; and ensures that the aliens are readily available for removal. The government contends that petitioner is likely to flee and/or commit new crimes if released from INS detention. However, this Court is not persuaded that stripping immigration judges of the discretionary power to grant bond pending removal proceedings, and stripping aliens of the right to obtain an individualized bond determination is constitutional.

None of the justifications advanced by the government are sufficient since these objectives can be satisfied by conducting individual hearings. While the risk of flight by aliens (and petitioner) may be significant, the public can still be protected by a careful evaluation of an individual alien's case, which should result in the detention of those who are likely to flee. The need for a blanket rule of detention of certain aliens rather an individual evaluation is called into question by 8 U.S.C. § 1231(a)(3), (6), which provide that ninety days after an order of removal becomes final, an alien who has not yet been removed from the country may be released from detention in the discretion of the Attorney General. *See Martinez*, 28 F.Supp.2d at 1283–84. Aliens who are under a final order of removal surely present a higher risk of flight or danger to the community (perhaps a very substantially higher risk of flight) yet their continued detention is not mandated. Because a hearing within a reasonable time period after removal proceedings are commenced will meet the government's concerns regarding protection of the community and lessening the risk of flight, delaying a hearing until after the alien has been ordered removed is excessive. A bond hearing would undoubtedly reduce the risk of an erroneous deprivation of liberty. The administrative costs would not be unduly burdensome given that such a hearing is already available to removable aliens not subject to mandatory detention, see 8 U.S.C. § 1226(a), and to aliens who have been found removable. See 8 U.S.C. § 1231(a)(3), (6); *see also Danh*, 59 F.Supp.2d at 1005 (noting that the administrative burden is not great in an overall deportation process that could potentially take years and that allowing release on bond may serve the government's interest by freeing jail space).

The *Diaz–Zaldierna* court reached a contrary conclusion in holding that it was reasonable to presume that anyone committing a serious controlled substance offense was a threat to "social peace" and therefore a hearing was not warranted. *See Diaz–Zaldierna*, 43 F.Supp.2d at 1120. While many aliens who have been convicted of crimes that render them deportable

may well be a threat, this Court finds that assuming all such aliens to be a threat per se is too general a characterization. In *Sierra–Tapia*, the court found that an arriving alien arrested at the United States border while driving a car in which 42.5 pounds of marijuana was found and convicted of knowing importation of and possession with intent to deliver the marijuana had such a remote and minuscule chance of being allowed to remain in the United States that she lacked "a liberty interest cognizable under the Due Process Clause." *Sierra–Tapia v. Reno*, 1999 WL 803898 at *5 (S.D.Cal.1999). Petitioner's case is distinguishable from *Sierra–Tapia* because he was not arrested while arriving at the border. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (holding that aliens at the threshold of initial entry have virtually no Due Process protections). Petitioner's case is distinguishable from *Diaz–Zaldierna* and *Sierra–Tapia* because he has not been convicted of a controlled substance offense.

Petitioner's case is also distinguishable from *Parra* wherein the Seventh Circuit found that the mandatory detention provisions are constitutional. In *Parra* the petitioner conceded deportability and did not contest removal. This fact was apparently determinative to the Seventh Circuit, which repeatedly emphasized that the reason Parra's claim lacked merit was because he had already conceded removal and was merely "postponing the inevitable." *See, e.g. Parra*, 172 F.3d at 958 ("Parra's legal right to remain in the United States has come to an end"). Thus, the *Parra* court was faced with the circumstances of the detention of an alien who conceded removability and was simply "pass[ing] time while waiting for the order to become final." *See Parra*, 172 F.3d at 956, 958. While petitioner's chances of obtaining cancellation of removal or other discretionary relief from the immigration judge's finding of removability may not be great, *Gonzalez v. INS*, 996 F.2d 804, 809–10 (6th Cir.1993), he has not conceded

removability and the court shall assume that he will be provided a meaningful opportunity to make his plea for cancellation and/or other discretionary relief. Thus, petitioner's liberty interest in remaining in the United States has not been fully extinguished. Consequently, his Fifth Amendment right to due process entitles him to an individualized determination of his potential flight risk and danger to the community before he may be subjected to continued detention.

This Court concludes that INA § 236(c), 8 U.S.C. § 1226(c), "fails to satisfy the basic requirements of due process under the Fifth Amendment. Although bail [or bond] is not an absolute right under our laws, an individual must be given the opportunity to challenge his custody and, if appropriate, receive release on bail." *Paxton v. United States INS, et al.*, 745 F.Supp. 1261, 1265 (E.D.Mich.1990), (holding that alien detention statute mandating detention of alien convicted of aggravated felony without permitting any type of hearing on whether release on bail should be permitted violated alien's right to substantive and procedural due process, where deportation proceedings had not concluded and alien was placed in custody indefinitely). *Paxton* was remanded to the district court by the Sixth Circuit when the INA was amended to require bail hearings for aliens in Paxton's position after many courts had, like the district court in *Paxton*, found that the mandatory detention provisions then at issue were unconstitutional. *See Paxton v. United States INS*, 925 F.2d 1465, 1991 WL 22017 (6th Cir. 1991) (unpublished table case).

Respondent maintains that petitioner's case bares no similarity to *Paxton*, because petitioner is a repeat offender while Paxton was a first offender and Paxton had lived outside the United States for only four days after his birth in nearby Windsor, Canada. These differences may be significant in the determination of whether petitioner is granted release on

bond pending a final adjudication of removability. However, this Court is not persuaded that these differences are controlling regarding whether petitioner is entitled to an individualized bond determination hearing. Petitioner was a lawful permanent resident of the United States for over fifteen years before removal proceedings were instituted against him. Petitioner has been convicted of several crimes. However, petitioner's convictions are not so numerous, or for crimes so horrendous, outrageous, or violent that this Court believes that his right to remain in the United States has been fully extinguished. Therefore, despite the substantial possibility that petitioner will be required to leave the United States and return to his place of origin, this Court concludes that he is entitled to an individualized determination of whether he must be detained in INS custody pending a final adjudication of his removability.

## VI. Conclusion

Petitioner does not have an absolute right to remain at liberty while the INS conducts removal proceedings against him. However, due process requires an individualized hearing on the necessity of his detention. Accordingly, this Court shall conditionally grant the petition for a writ of habeas corpus ordering petitioner's release unless the government begins a review process, including holding an individualized bond hearing within thirty days, to determine whether petitioner's continued detention is necessary to prevent a risk of flight and/or a threat to the safety of the community. This Court notes that, in conducting this review, the INS is reminded that "grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens." *Chi Thon Ngo,* 192 F.3d at 398.

Accordingly,

**IT IS ORDERED** that Respondent's motion to dismiss the petition is **DENIED.**

**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED.** Petitioner is to be **RELEASED** from custody unless the government begins a review process, including holding an individualized bond hearing within thirty days, to determine whether petitioner may be released on bond without undue risk of flight and/or danger to the community, pending a final adjudication of removability.